**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee M. Zinni; Marco S. D'Alonzo, ) | No. CV-09-2035-PHX-FJM |
| Plaintiffs, ) | **ORDER** |
| vs. ) | |
| M&I Marshall & Ilsley Bank, et al., ) | |
| Defendants. ) | |

We now have before us defendant M&I Marshall & Ilsley Bank's (the "Bank") motion for summary judgment (doc. 64), plaintiffs' response (doc. 69), the Bank's reply (doc. 70), plaintiffs' motion for summary judgment (doc. 59), the Bank's response (doc. 67), and plaintiffs' reply (doc. 71). We also have before us plaintiffs' motion to strike the Bank's rebuttal expert report (doc. 60), the Bank's response (doc. 66), and plaintiffs' motion for default judgment against defendant Larry J. Hargrove (doc. 58).

**I**

Plaintiffs allege in their amended complaint that they contracted with defendant Larry Hargrove to remodel their property located in Scottsdale, Arizona. They obtained a loan from defendant M&I Bank to refinance their original mortgage in the amount of $230,000, plus an additional $200,000 for the construction project. Plaintiffs assert numerous claims against the Bank, including violations of the Truth in Lending Act, 15 U.S.C. § 1635

("TILA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"), the Home Ownership Equity Preservation Act, 15 U.S.C. § 1639 ("HOEPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e) ("FDCPA"), and against the Bank and Hargrove for breach of contract, negligent misrepresentation, negligence, and fraud. Plaintiffs now seek summary judgment on two TILA claims. They argue that the Bank violated TILA (1) by failing to fully disclose the interest payment schedule during the construction phase of the loan, and (2) by paying construction draw proceeds directly to the contractor. The Bank moves for summary judgment on each of the claims asserted in plaintiffs' amended complaint.

## A.

Plaintiffs first argue that the Bank violated TILA by failing to properly disclose the payment schedule for the construction phase of their loan. The plaintiffs' Disclosure Statement provided only that plaintiffs were obligated to make "12 payments of interest only during construction." PSOF, ex. 4.

TILA generally requires that a creditor disclose the "number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(6). Plaintiffs contend that their loan is governed by 12 C.F.R. § 226.18(g)(2), which provides, "[i]n a transaction in which a series of payments varies because a finance charge is applied to the unpaid principal balance," the creditor must disclose "(i) [t]he dollar amounts of the largest and smallest payments in the series; [and] (ii) [a] reference to the variations in the other payments in the series." 12 C.F.R. § 226.18(g)(2). Plaintiffs argue that the Disclosure Statement's notation of "12 payments of interest only during construction," does not satisfy this disclosure requirement.

We agree with the Bank that plaintiffs' reliance on § 226.18(g)(2) is misplaced. Instead, plaintiffs' loan is governed by 12 C.F.R. § 226.17(c)(6), which applies to a loan that is "a multiple-advance loan to finance the construction of a dwelling," that will be permanently financed by the same creditor. Where the "creditor chooses to disclose the construction and the permanent financing as one transaction," as the Bank did here, we look

to 12 C.F.R. § 226, Appendix D, Part II(C) for the relevant disclosure requirements.  Under Appendix D, Part II(C)(1), the disclosure need not "reflect[] the number or amounts of payments of interest only that are made during the construction period."  Instead, the Bank is only required to disclose "[t]he fact that interest payments must be made and the timing of such payments."  12 C. F. R. § 226, Appendix D, Part II(C)(1).  Plaintiffs' TILA Disclosure Statement disclosed that plaintiffs would be required to make "12 payments of interest only during construction."  This satisfied 12 C.F.R. § 226.17(c)(6), including 12 C.F.R. § 226, Appendix D, Part II(C).

We reject plaintiffs' argument that the Bank's disclosure obligation is instead governed by Appendix D, Part II(C)(2), which applies to multiple-advance construction loans where the borrower is required to pay interest on the entire loan amount from the loan's inception without regard to actual disbursements.  The evidence does not show that plaintiffs paid interest on the entire loan amount during the construction phase.

Plaintiffs' Disclosure Statement provided that after the construction period, plaintiffs were required to make 48 equal monthly payments of $2,586.41, followed by 299 equal monthly payments of $2,373.54.  In contrast, the payments made during the construction phase varied widely, indicating the application of interest to a changing principal balance.  Moreover, the pre-construction payments were significantly less than the post-construction payments applied to the full loan amount.  We conclude that the Bank's disclosure obligations were governed by 12 C.F.R. § 226.17(c)(6) and that the Bank satisfied its disclosure obligations.

**B.**

Relying on 12 C.F.R. § 226.34(a)(i), plaintiffs next contend that the Bank violated TILA by paying the construction draw proceeds directly to Larry Hargrove, plaintiffs' contractor, rather than directly to them, or jointly to them and Hargrove.  Section 226.34(a) applies to a "consumer credit transaction that is secured by the consumer's principal dwelling, and in which . . . [t]he total points and fees payable by the consumer at or before loan closing will exceed the greater of 8 percent of the total loan amount, or $400."  See 12

1  C.F.R. § 226.32(a)(1)(ii).  Plaintiffs borrowed $437,500.  To fall within § 226.34(a) they

2  would have had to pay $35,000 in points and fees ($437,500 x .08), but they paid less than

3  $2,000.  See PSOF, ex. 5.  Therefore, because plaintiffs did not pay points and fees that

4  exceeded 8% of their total loan amount, § 226.34(a) does not apply.

5  　　Moreover, on April 9, 2008, plaintiffs and the Bank executed a construction loan

6  agreement that explained the method by which payments would be made during construction.

7  The agreement expressly stated that "disbursements of Construction Loan proceeds by

8  Lender shall be made pursuant to wire transfers paid to the Contractor . . . or directly to

9  Borrower, as Lender may determine."  DSOF, ex. 10 at § 4.03.  Therefore, plaintiffs

10  expressly authorized direct payments to Hargrove.

11  　　The Bank did not violate TILA by paying loan proceeds directly to the contractor.

12  **II**

13  　　The Bank moves for summary judgment on all claims asserted in plaintiffs' amended

14  complaint.  Plaintiffs do not respond to the Bank's motion with respect to Counts 2 (RESPA),

15  3 (HOEPA), 4 (FDCPA), 8 (breach of duty of good faith and fair dealing), 9 (negligent

16  misrepresentation), 10 (negligence), 11 (fraud), and 12 (negligent infliction of emotional

17  distress).  Therefore, the Bank's motion for summary judgment is granted on each of these

18  claims.  See Fed. R. Civ. P. 56(e)(3); LRCiv 7.2(i).

19  　　With respect to Count 5 (breach of contract), plaintiffs allege that the Bank, through

20  its loan officer, Bob Goodrich, breached the construction loan agreement by advancing funds

21  to contractor Larry Hargrove without first verifying that Hargrove had fully performed each

22  phase of the construction.  Amended Complaint ¶ 128.[1]

23  　　The construction loan agreement provided that "Lender is under no duty to visit the

24  construction site, or to supervise or observe construction."  DSOF, ex. 10, ¶ 7.13(c).

25  Nevertheless, plaintiffs claim that Bob Goodrich "led [them] to believe that before any

26  

27  
28  　　[1]Plaintiffs assert numerous other allegations to support their breach of contact claim, but they abandon those claims by failing to respond to the Bank's motion for summary judgment.  See Fed. R. Civ. P. 56(e)(3); LRCiv 7.2(i).

construction loan funds [were] disbursed to the contractor, the bank would inspect the property to make sure that the work that needed to be done was 100% complete." PCSOF ¶ 67. Plaintiffs contend that Goodrich's representations orally modified the written agreement and imposed upon the Bank an affirmative duty to inspect plaintiffs' property before disbursing construction funds. We disagree.

The Bank advanced five construction disbursements, each at plaintiffs' written authorization. DSOF, ex. 9. Plaintiffs were personally involved in the construction project, completing much of the work themselves. Amended Complaint ¶ 42. They were therefore aware of the construction progress as they continued to authorize the disbursements. On February 15, 2009, after 8 months of construction and 4 disbursement authorizations, plaintiffs met with Hargrove and once again approved his request for a disbursement. Id. ¶¶ 40-45. Plaintiffs signed the disbursement form provided by Hargrove and the Bank disbursed the funds on the same day.

Plaintiffs' own allegations belie their claim that the parties orally modified the contract to require the Bank to inspect the property before disbursing funds. Plaintiffs were aware of the construction delays but continued to authorize disbursements. Id. ¶¶ 41-42. Plaintiffs have not presented a triable issue of fact showing that the written agreement was orally modified. Therefore, we grant the Bank's motion for summary judgment on the breach of contract claim in Count 5.

**III**

Finally, the plaintiffs move for entry of default judgment against Larry Hargrove (doc. 58). Plaintiffs served Hargrove on January 22, 2008, but he has failed to answer or otherwise defend this action. Therefore, pursuant to Rule 55(b)(2), Fed. R. Civ. P., we grant plaintiffs' motion for entry of default judgment against Larry Hargrove (doc. 58).

**IV**

**IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 64), and **DENYING** plaintiffs' motion for summary judgment (doc. 59). Judgment is granted in favor of defendant M&I Marshall & Ilsley Bank and against plaintiffs on all claims.

1    **IT IS ORDERED DENYING** plaintiffs' motion to strike as moot (doc. 60).

2    **IT IS FURTHER ORDERED GRANTING** plaintiffs' motion for default judgment

3 against Larry Hargrove (doc. 58). Plaintiffs shall file with the court a proposed form of

4 default judgment against Hargrove no later than 10 days from entry of this order.

5    DATED this 10th day of May, 2011.

6

7    _____

8              Frederick J. Martone
          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28